CASE 48—PETITION ORDINARY—NOVEMBER 14.

# Nicholson, &c., v. National Bank of Newcastle,

APPEAL FROM HENRY CIRCUIT COURT.

1. BANKS—DISCOUNTING AS DISTINGUISHED FROM PURCHASE.—A discount by a bank is a deduction or drawback made upon its advances or loans of money upon negotiable paper or other evidences of debt, payable at a future day, which are transferred to the bank, and is a purchase by discounting as distinguished from a purchase by barter and

sale, where the seller does not indorse the note except, perhaps, without recourse, and is not accountable upon the contract for the value of it.

Four days before the maturity of a note for $260 a national bank purchased it in the usual course of trade at a "lumping discount" of one dollar, and the note was indorsed by the seller and another. Held—That there was a "discounting" of the note within the meaning of the National Banking Act, which confers upon national banks "such incidental powers as shall be necessary to carry on the business of banking by discounting and negotiating promissory notes," and therefore the purchase of the note by the bank was not *ultra vires*, and had the effect, under our statute, to place it on the footing of a bill of exchange.

2. NATIONAL BANKS ARE NOT REQUIRED TO ADOPT A UNIFORM RATE OF DISCOUNT, but may make the per centum of discount a subject of bargain upon the occasion of each purchase. And the fact that a note is not discounted at a certain per cent., but by a "lumping trade," does not make the purchase *ultra vires* or deprive the note of its negotiable character. Nor does the fact that the discount is usurious affect the title of the bank.

J. W. CROAN, FAIRLEIGH & STRAUS FOR APPELLANTS.

A national bank can acquire title to a note or bill only by the act of discounting it, and the court should have given the instructions asked by appellants drawing the distinction between a *discounting* and a *purchase*. (First Nat. Bank of Rochester v. Pierson Thompson's National Bank Cases, 637; Weckler v. First Nat. Bank of Hagerstown, 14 Am. Law Reg., 610; Rev. Stats., U. S., sec. 5136; Fowler v. Scully, 72 Pa. St.)

WM. CARROLL FOR APPELLEE.

The distinction attempted to be drawn between purchase and discount is hypercritical. "Discount is the difference between the *price* of the debt and the *amount* of the debt." (McCleod on Banking, 43; Bank v. Savery, 82 N. Y., 291; Nat. Bank of Gloversville v. Johnson, 14 Otto, 271.)

Section 5197 of the Revised Statutes of the United States recognizes the right of national banks to purchase bills.

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The appellee, as its name indicates, is a bank doing business in the State under and by the authority of the Banking Act of the Congress of the United States, and

as such bank it purchased the following note before it was due:

"$260.                                    MARCH 30, 1887.

"Nine months after date we promised to pay to the order of B. F. Smith two hundred and sixty dollars at German Insurance Bank, Louisville, Ky.

"Value received.                    J. W. RIDGWAY,

"J. B. NICHOLSON."

This note, on the 26th day of December, 1887, four days before its maturity, was, as is alleged, "assigned, transferred and discounted" for value to the appellee by B. F. Smith, and at the time the note was discounted B. F. Smith and J. J. Smith indorsed the same.

Only the makers of the note made defense. It is insisted by them that the note was not purchased by discounting it in the regular course of banking business but by mere barter and sale, which purchase was, under the national banking law, *ultra vires;* consequently, the appellee acquired a title to the note by the purchase, or if the purchase was not void in consequence of its being *ultra vires*, the purchase was not of that character that gave the note in the hands of the appellee, as an innocent holder for value, the immunity of a foreign bill of exchange, but was of that character—to-wit: a mere purchase by barter and sale—that entitled the appellants, as makers, to rely on any defenses to the note, in hands of the appellee, that they could have relied on against the payee.

The lower court instructed the jury that if they believed that the appellee discounted the note before its maturity, etc., in the usual course of business, and without notice of any infirmity in the note, they should find for the appellee. The court refused to submit the ques-

tion as to whether or not the purchase of the note was by mere barter and· sale. Therefore it must be construed that the court was of the opinion that there was not sufficient evidence of that fact to entitle the question to go to the jury, or that if the purchase was by barter and sale it was not, in consequence of it, *ultra vires*, or that it did not reduce the note from the footing of a foreign bill of exchange to the level of an ordinary promissory note. If the court was in error as to these propositions the case must be reversed, if not, it must be affirmed.

The act of Congress, relating to the powers of the appellee, among other things, provides : "To exercise by its Board of Directors, or duly authorized officers, subject to law, all such incidental powers as shall be necessary to carry on the business of banking, by discounting and negotiating promissory notes," etc. Section 21, chapter 22, of the General Statutes, provides in substance that promissory notes payable to any persons or corporation, and payable and negotiable at any bank incorporated under any law of this State, or organized in this State under any law of the United States, which note shall be indorsed to and discounted by the bank at which it is made payable, or by any of the banks specified, shall be placed upon the same footing as a foreign bill of exchange. There is no dispute about the fact that the note was made payable and negotiable at a bank organized in this State under the law of the United States, and that it was purchased before its maturity and without notice of any infirmity in it, and that the appellee was organized in this State under the law of the United States; but the contention is, as said, that the purchase was not by discounting the note in the usual course of banking business

but by barter and sale; hence, the purchase was either *ultra vires* and void, or that the note, by reason of such purchase, was not placed upon the footing of a foreign bill of exchange, but it was subject to any defenses that the appellants were entitled to as against the payee.

If the purchase of the note was by discounting it in the usual course of business—the business of discounting—and not by barter and sale, all controversy as to the right of the appellee to recover its value as upon a foreign bill of exchange is at an end. What, then, is a purchase by discount and a purchase by barter and sale? The first named is defined as follows: " By language of the commercial world and the settled practice of banks, a discount by a bank means, *ex vi termini*, a deduction or drawback made upon its advances or loans of money upon negotiable paper or other evidences of debt, payable at a future day, which are transferred to the bank." (See American and English Encyclopædia of Law, volume 5, page 678.)

The discounting indicated is a purchase by discounting as distinguished from a purchase by barter and sale. The latter is defined by Bouvier and this court to mean that the seller does not indorse the note at all, except, perhaps, without recourse, and is not accountable upon the contract for the value of it. He is only responsible in such sale for fraud, and upon his implied warranty that the note is genuine. In all else the purchaser takes the note for better, for worse; hence, he gives, as a general thing, less for it. (See 1st Bouvier's Law Dictionary, title Discount, Triplett v. Holly, 4 Litt., 130.) Which category is the purchase in? Let us see.

The substance of the uncontradicted evidence of the

appellee's cashier is that the appellee's usual discount is 8 per cent.; that four days before the maturity of the note he purchased it in the usual course of trade, the time being short, at a lumping discount of $1.00. The appellant contends that this lumping discount, or "lumping trade," as the witness calls it, was not discounting in the usual course of trade, therefore the purchase of the note was either *ultra vires* and void, or that it was deprived of its footing as a foreign bill of exchange, and stood in the attitude of having been purchased by barter and sale, which let in the antecedent equities between the makers and payee as against the note in the hands of the appellee.

But the purchase of the note was not in effect by barter and sale. For, as seen, the elements of a sale without an assignment, or an assignment without recourse, and the non-accountability for the value of the note, are wanting to make such sale in a case like this. Here the seller of the note and another did indorse it and thereby bound themselves to be accountable for its value, and the note was purchased before its maturity for value and in the usual course of discounting and without notice of any infirmity in it. All the elements requisite to put the paper in the hands of the appellees upon the footing of a foreign bill of exchange were complied with, save, as is contended, it was discounted by a "lumping trade" and not according to the rule of 8 per cent., ascertained by exact calculation. But it seems to us that the taking a greater sum as discount than 8 per cent., and by a lumping trade, does not deprive the paper of its footing as a bill of exchange. The law of Congress does not prescribe the per cent. that shall be charged as discount in order to make the purchase by discount not *ultra vires*

Nicholson, &c., v. National Bank of Newcastle.

or to make it have the character of negotiable paper. The per centum of discount is left optional with the bank, except if such per centum amounts to usury the bank forfeits its entire interest, etc., but the purchase, so far as the title of the note and its negotiability is concerned, is not affected by the usurious discount. Nor does the act of Congress require the bank to adopt any uniform per centum of discount; that matter is left optional with the bank. It may adopt a general rule upon the subject, which it may disregard or change as often as it pleases; or it may not adopt any general rule at all on the subject, but make the per centum of discount a subject of bargain upon the occasion of each purchase, controlled by the ability and punctuality of the parties, etc. The pivotal question is not whether the bank purchased the note by discounting at a regularly established per centum or by a lumping trade, but whether the note was purchased by discounting it in the usual course of trade—that of bank discounting at any price the parties might agree on—before the maturity of the note and without notice of any in-firmity in it. These conditions being answered in the affirmative, the paper is entitled to the immunities of negotiable paper. It is true the discount might be so great as to be strong evidence, in connection with other circumstances tending to prove notice of the infirmity of the paper, that the bank had notice at the time it bought the paper of its infirmity. But such is not the case here. There is no error in the instructions prejudicial to the appellants.

The judgment is affirmed.